UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAMAR COOPER, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 10-cv-04119 |
| THOMAS DART, DAVID FAGUS, and | ) |
| NURSE JUDY PRICE | ) Judge Sharon Johnson Coleman |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lamar Cooper, filed a pro se complaint on July 1, 2010, and a later Amended Complaint, claiming that Nurse Judy Price, David Fagus (former Chief Operating Officer of Cermak Health Services of Cook County), and Thomas Dart, Sheriff of Cook County, violated his constitutional rights by providing deficient medical care and knowingly disregarded the risk of serious harm. Defendants move for summary judgment [116], arguing that Nurse Price was not deliberately indifferent to Cooper's medical needs, that Cooper failed to establish that the changing of his bandages constituted a serious medical need, the totality of Cooper's medical needs were adequately addressed, and Nurse Price is entitled to qualified immunity. For the reasons stated below, this Court grants defendants' motion as to Sheriff Dart and David Fagus in their individual capacities and denies the remainder of the motion.

**Background**

The relevant facts are largely undisputed. Cooper is a pretrial detainee at the Cook County Department of Corrections ("CCDOC"). In September 2008, just prior to his arrest, he received multiple gunshot wounds and was in a coma at Stroger Hospital for over a month. While at Stroger

1

hospital, Cooper had extensive surgeries. These surgeries included a sternotomy, thoracotomy, and tracheotomy. He also had the right lobe of his lung removed, pins placed in his wrist, and had repairs to his collarbone and femur. As a result of the wounds, Cooper's lungs, intestines, and colon were partially removed. Cooper also had other medical procedures to treat various wounds. Cooper's colostomy, was not precisely a colostomy, it was a natural forming enterocautaneous fistula ("fistula").

Cooper was wheelchair bound and dependent on wound vacuums when he transferred from the hospital to Division Eight of Cook County Jail in late December 2008. Approximately one year later, Cooper was transferred to Division Ten of the Jail. On December 3, 2008, Cooper was transferred to Cermak Heath Services ("Cermak") within Cook County Jail. During Cooper's stay at Cermak, he received medical care overseen by his primary care physician. She coordinated daily care for his ongoing medical needs, coordinated with specialists at Stroger hospital as well as emergent care when necessary. Cooper's daily medical care included wound care and dressings for one year: from December 2008 to December of 2009. On multiple instances, Cooper alleges that his fecal bag and dressings were not properly cared for and he suffered burns and permanent scarring on his abdomen and genital area from gastric acids leaking from the fecal bag. Cooper alleges inadequate medical care of his fistula on December 15, 19, 24, 2009.

On December 14, 2009, Cooper was transferred from Cermak to Division 10 of Cook County. Division 10 is a medical division that houses detainees with medical needs. Defendant Nurse Price was a charge nurse. As a charge nurse she had the authority to delegate to other nurses on a particular shift. Nurse Price's responsibilities included ensuring that detainees receive proper and adequate medical attention.

Enterocutaneous fistulas are common after major abdominal surgery. Fistulas develop when tissue from the intestine and the skin fuse together, providing a direct opening from the outside into

the intestine. They are open wounds that require frequent dressing changes. A fistula presents a risk of skin irritation, infection, dehydration, and sepsis. Untreated, a fistula may result in severe and life threatening conditions. Cooper's fistula drained feces, gastric acid, and "stool colored stuff." It is undisputed that Dr. Mohamed Mansour, the primary care physician for the Division, had never seen Cooper's fistula with any sign of infection.

Daily care for Cooper's wound included cleaning the area, applying protective, paste affixing a bag to collect drainage using bandages and gauze and emptying the bag if needed. Cooper maintains that everyone was aware of the wound and its status, including Nurse Price. In order to arrange for any medical care, inmates had to either fill out a form or make a verbal request. At Division 10, physicians give orders regarding medical treatment, such as wound care, and the nurses carry them out. Health care providers see detainees in the dispensary. Nurses are not allowed into detainees' cells. Officers are not present for medical exams. Detainee visits to the dispensary are reflected in logbooks. According to procedure, sometimes detainees sign in themselves, sometimes detainees are signed in by Jail or Cermak personnel.

*December 15, 2009- First Interaction between Nurse Price and Cooper*

Cooper's first interaction with Nurse Price was on December 15, 2009, in the dispensary. He also met with Dr. Mansour, and was scheduled for a follow up exam on December 30, 2009. Cooper had issues with his bandage for approximately 18 hours prior to this visit to the dispensary. Nurse Price refused Dr. Mansour's request that she clean the area around the fistula. Nurse Price stated that she did not have any more bags and left to clock out. Cooper requested treatment, but was sent back to his cell without a bandage change. He had stool and gastric acid on his body and clothing, and stated that he felt burning. Nurse Hall changed Cooper's bandage approximately three hours later. Cooper is unsure if Nurse Price sent Nurse Hall to tend to his wounds on this date, but nurses can delegate duties to nurses beginning their shift.

*December 16-18, 2009*

Medical care providers at Cermak saw Cooper on December 16 and December 17, 2009, but did not receive a bandage change on December 16. Plaintiff did not complain about medical treatment in any grievance regarding the medical care he received on December 16. On December 17, when Cooper was in the Divisions 10 dispensary, Nurse Price told an officer to get Cooper out of the dispensary; Cooper did not receive any wound care at that time but cannot recall that date specifically. On December 18, 2009, Cooper received a bandage change at the dispensary from Nurse Austin. Nurse Austin, who was very familiar with his wound, said it was getting worse when she changed his bandage. The documents related to the wound care on December 18, 2009, reflect a surgical wound with a small amount of yellow discharge.

*December 19 & 23, 2009*

On December 19, 2009, Cooper went to the dispensary where Dr. Patel told Nurse Price to change his fecal bag and dressing. Nurse Price refused. A different nurse changed Plaintiff's fecal bag dressing ten minutes later. On December 23, Cooper makes the same allegations as he made on December 19: Nurse Price refused to change his bandage and then ten minutes later another nurse changed his bandages. On or around December 23, 2009, a similar incident occurred where Nurse Price refused to change his bandage and a ten-minute delay before treatment by another nurse. A nurse, at the end of his or her shift, can delegate duties to the nurses beginning their shift.

*December 24, 2009*

On December 24, 2009, Cooper began seeking medical care around 7:00 am. He requested medical care by asking an officer to call the dispensary. The officer talked to Nurse Price who told the officer to find Nurse Merchingson to help Cooper. Defendants assert that the officer was unable

4

to locate Nurse Merchingson, but Cooper disputes this assertion as lacking admissible evidence to support it. Cooper was at the dispensary between 3pm and 11 pm.

It is undisputed that Cooper had burns from the drainage which resulted in raw skin. He also would have feces dirty his clothes and bedding. Skin irritation is common with these kinds of wounds due to both the drainage and the bandage. Cooper claims, and defendants do not refute, that he is still scarred on his abdomen and genital area from the gastric burns and on a scale of 1 to 10, the gastric acid caused Cooper pain "past 10."[1] Cooper is only claiming injuries for his treatment by Nurse Price on December 15, 17, and 24, 2009.

**Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper where the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. *Fed. R. Civ. P. 56(a); Celotex v. Catrett*, 477 U.S. 317, 324 (1986). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005).

**Discussion**

Defendants move for summary judgment, arguing that Nurse Price was not deliberately indifferent to Cooper's medical needs, that Cooper fails to establish that his bandage changes constitute a serious medical need, the totality of his medical care was excellent, and that Nurse Price is entitled to qualified immunity. Lastly, defendants assert that defendants Fagus and Dart are not

---

[1] Defendants' Response to Plaintiff's Statements of Additional Fact ¶ 34 states that defendants dispute this fact, but in support of that dispute state only that plaintiff received medical care on numerous occasions and has no recollection of being denied medical care on numerous occasions. This response does not contradict the injuries that Cooper describes.

5

individually liable for Cooper's injuries because there are no allegations or evidence to show personal involvement in the alleged deprivation of Cooper's civil rights.

*1. Defendants Dart and Fagus*

Section 1983 requires plaintiffs show that each government official defendant has violated the Constitution through his own actions. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Here, Cooper makes no allegations and provides no evidence to support claims against defendants Fagus and Dart in their individual capacity. Accordingly, this Court grants summary judgment on that issue.

*2. Nurse Price*

Cooper alleges injuries that were directly or indirectly caused by Nurse Price occurred while he was a pretrial detainee at the Cook County Jail in December 2009. The constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment as opposed to an inmate's rights under the Eighth Amendment. *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Seventh Circuit Court of Appeals applies the same standard to claims arising under the Fourteenth Amendment for pretrial detainees as it does to claims brought by convicted prisoners under Eighth Amendment. *See Farnham*, 394 F.3d at 478 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011).

Defendants argue that Cooper fails to meet the objective prong to establish that his bandage changes constitute a serious medical need. A serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

Here, there is evidence in the record from which a reasonable jury could conclude that Cooper suffered from a serious medical need. Cooper claims that his fistula constitutes such a serious medical condition. Indeed, defendants do not dispute that Cooper had burns from the drainage which resulted in raw skin. He also would have feces dirty his clothes and bedding. Defendants also do not refute Cooper's complaints of the level of pain he experienced from the gastric acid on his skin. It is equally clear that regularly changing the dressing and wound were mandated by Cooper's physician. As the district court noted in *Williams v. Erickson*, in finding that the need to tend to a colostomy bag constitutes a serious medical need: "Indeed, it would be difficult to state the contrary proposition with a straight face." *Williams v. Erickson*, 962 F. Supp. 2d 1038, 1042 (N.D. Ill. 2013) (Kennelly, J.). This Court therefore finds that Cooper has sufficiently demonstrated an objectively serious medical need to proceed to trial.

Cooper also demonstrates that Nurse Price was subjectively aware of the need to change dressings on Cooper's fistula and clean the wound. There is evidence in the record that she was directed to do so on at least one occasion by Dr. Mansour. Indeed, defendants do not dispute that Nurse Price was aware of the fistula or Cooper's other injuries. Defendants argue however that Nurse Price was not deliberately indifferent to Cooper's health and safety. Deliberate indifference

7

requires the prison official must disregard the known risk by failing to take reasonable measures to stop it. *Farmer*, 551 U.S. 825. However, a prison official who knows of a substantial risk to an inmate's health and reasonably responds to that risk may be free from liability. *Id.* Deliberate indifference is satisfied by something less than purpose or knowledge to cause harm, but it requires more than just an ordinary lack of due care or mere negligence. *Id.*

Defendants argue that Cooper is demanding a specific treatment from a specific nurse and he is not entitled to such care. However, this Court finds that there is sufficient factual dispute over whether Nurse Price responded reasonably to Cooper's serious medical need. Defendants do not dispute that Nurse Price refused to change and clean Cooper's fistula and bandages on at least one occasion, December 15, 2009. Further, it is undisputed that Cooper returned to his cell without having his bandaged changed. There is no evidence in the record to suggest that Nurse Price delegated the task to another nurse. Defendants also do not dispute that on December 17, 2009, Nurse Price told corrections officers to get Cooper out of the dispensary where he had gone to seek treatment for his fistula. When viewed in the light most favorable to Cooper, as we must, these facts demonstrate that there is an issue of fact as to whether Nurse Price reasonably responded to Cooper's serious medical need.

Defendants further argue that the totality of Cooper's medical care was excellent and therefore Nurse Price's refusal to change his bandages and clean his fistula does not amount to deliberate indifference. This Court disagrees and finds there are factual issues for the jury to resolve whether Nurse Price's actions constitute deliberate indifference or whether they were isolated incidents of delay in an otherwise adequate treatment of Cooper's medical needs. Defendants rely on *Gutierrez v. Peters,* 111 F.3d 1364 (7th Cir. 1997). *Gutierez* is distinguishable from the case at bar. There, the plaintiff sought treatment for a cyst, which the prison doctor initially told him was not infected and prescribed hot baths. *Id.* at 1366. The cyst became infected and he was prescribed sitz

8

baths, antibiotics, and gauze for dressing the wound. *Id.* The court held however that the plaintiff had not adequately pleaded deliberate indifference because he alleged only one or two instances of delay in treatment over the course of ten months of otherwise appropriate care. *Id.* The court found that the overall record of his treatment revealed almost continuous care such that the isolated incidents of delay cannot support a finding of deliberate indifference. *Id.* at 1375. Here, the period of treatment is far more condensed. Cooper complains only of his treatment while in Division 10 over a period of approximately two weeks. Further, the issue here is not simply one of delay in treatment, but of Nurse Price's refusal of treatment. This Court finds that Cooper has sufficiently established questions of fact for resolution by a jury.

*3. Qualified Immunity*

Defendants are also not entitled to summary judgment on qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). To overcome the defense of qualified immunity, a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001).

Here, there is no question that the standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well established in December 2009. The "purpose of the doctrine of qualified immunity is to shield public officers from liability 'consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it.'" *Walker,* 293 F.3d at 1040 (citing *Ralston v. McGovern*, 167 F.3d. 1160, 1162 (7th Cir. 1999)). This Court has found that there is a factual question for the jury to resolve as to whether Nurse Price acted reasonably in response to Cooper's

9

objectively serious medical need. Indeed, at the time of Nurse Price's refusal to clean and care for Cooper's fistula such an action would give rise to liability under section 1983.

**Conclusion**

Based on the foregoing discussion, defendants Fagus and Dart are granted summary judgment as to any claims against them in their individual capacity. The remainder of defendants' Motion for Summary Judgment [116] is denied.

IT IS SO ORDERED.

Date: August 6, 2014

Entered: _____

United States District Judge