# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAMAR COOPER, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 10-cv-04119 |
| THOMAS DART, DAVID FAGUS, and NURSE JUDY PRICE | ) |
| | ) Judge Sharon Johnson Coleman |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lamar Cooper, filed a *pro se* complaint on July 1, 2010, and a later Amended Complaint, claiming that Nurse Judy Price, David Fagus (former Chief Operating Officer of Cermak Health Services of Cook County), and Thomas Dart, Sheriff of Cook County, violated his constitutional rights by providing deficient medical care and knowingly disregarding the risk of serious harm.[1] This Court held a bench trial from September 11-15, 2014. Following the bench trial, each party filed post-trial briefs with proposed findings of fact and conclusions of law. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

**Background and Bench Trial Proceedings**

The following facts are drawn from the record evidence and testimony elicited at trial. Lamar Cooper was a pre-trial detainee in the custody of the Cook County Department of Corrections

---

[1] This Court appointed counsel, Peter John Roberts of Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, to represent plaintiff. The Court thanks Mr. Roberts and his firm for their able and zealous advocacy on behalf of Mr. Cooper.

In its Summary Judgment Order, this Court dismissed defendants Dart and Fagus, individually, from this suit. *See* Dkt. 133.

1

during the relevant time period in December 2009. (Dkt. 156, Trial Transcript Vol. 2 at 182:20-25). Defendant Nurse Judy Price is a registered nurse employed by Cook County. Nurse Price worked in Division 10 of the Cook County Jail as a charge nurse from 2008 through November 2012. (*Id.* at 185:4-19). Charge nurses delegate assignments to other nurses on the shift. (*Id.* at 185:12). Nurse Price was the only charge nurse in Division 10 in 2009. (*Id.* at 186:8-11).

On September 28, 2008, Cooper was shot approximately 13 times and, consequently, underwent numerous surgeries to his chest and abdomen that included a bowl resection and fistula developed. A fistula is an opening between the small bowel and the air. (Dkt. 157, Trial Transcript Vol. 3 at 244:2-6). Before being transferred to Cermak Health Services at Cook County Jail, Cooper spent months at Stroger Hospital and Oak Forest Hospital. Before being discharged from Stroger Hospital, Cooper had to be able to move himself in and out of bed, feed himself, and take care of his ostomy appliance. (*Id.* at 244:19-245:2).

As of December 3, 2009, Cooper needed colostomy care as needed, not specifically daily. (Dkt. 158, Trial Transcript Vol. 4 at 351:6-352:8). Dr. Dennis, one of Cooper's treating surgeons testified to a note recorded in Cooper's medical chart from October 14, 2009, that "Patient states that he takes good care of the colostomy bag, lasts him one to five days; still has continued drainage, and he empties the bag four to five times per day." (Vol. 3 at 252:9-253:25). On December 12, 2009, a nurse in Cermak noted that Cooper was able to maintain his colostomy bag. (Vol. 4 at 350:4-19). Cooper had his fistula dressing changed on December 14, 2009. (*Id.* at 359:2-4; Vol. 2 at 110:25-111:4).

Cooper was transferred from Cermak to Division 10 of Cook County Jail on the evening of December 14, 2009. (Vol. 2 at 111:14). Division 10 of Cook County Jail has a higher level of medical services than are available in the general population divisions. (Dkt. 155, Trial Transcript Vol. 1: 36:20-23). Cooper suffered some leakage from the fistula during his transfer, which caused some

2

burning and stinging. Cooper alleges three instances of delayed changes to his dressing around the fistula by Nurse Price as the basis for his constitutional claim: December 15, 2009, December 17, 2009, and December 23, 2009.

*December 15, 2009*

Cooper requested medical care upon his arrival in Division 10 on December 15, 2009. (Vol. 2 at 114:17). According to Nurse Price, she first encountered Cooper on the morning of December 15, 2009, though Cooper claims it was not until the afternoon, he testified that he requested a dressing change that morning. Nurse Price testified that she delegated Cooper's dressing change to Nurse Lozano Ernie because she was afraid of Cooper. (*Id.* at 194:12-13). Nurse Price called Nurse Connelly, the Division 10 wound specialist, to find out what Cooper needed to care for the fistula. (*Id.* at 227:20-25). Nurse Price then called the storeroom to make sure that the supplies would be ordered for Cooper. (Vol. 3 at 277:19-23). She was certain the calls were made in the morning because Nurse Connelly usually teaches in the afternoons. (*Id.* at 277:8-18).

According to Cooper, he first encountered Nurse Price when he went to the dispensary seeking medical care at approximately 2:00 p.m. (Vol. 2 at 115:18-21). Nurse Price took Cooper's vital signs in the triage area of the dispensary with a corrections officer present. (*Id.* at 116:22-25, 117:5). Cooper asked if he could see a doctor and was examined by Dr. Mohamed Mansour. (*Id.* at 120:4-17). Cooper requested a dressing change and Dr. Mansour told Nurse Price that Cooper needed his dressing changed. Nurse Price removed the dressing from around the fistula. Dr. Mansour and Nurse Price examined the fistula and dressing, both observing the fluid leaking according to Cooper's testimony. (*Id.* at 122:8-19). Nurse Price commented that they did not have the same colostomy bags used for Cooper's fistula. (*Id.* at 112:18-19). Dr. Mansour's notes from December 15, 2009, indicate that Cooper had his colostomy bag in place, there was no drainage, and his wounds were healing. (Vol. 3 at 321:19-322:1). His progress notes do not indicate any evidence

3

of skin infection, inflammation, or dermatitis. (*Id.* at 323:18-324:2, 326:2-21, 327:16-20). Cooper testified that it was Nurse Hall that changed his dressing later that day. (*Id.* at 125:9, 126:5-25).

*December 17, 2009*

Cooper testified that when he went to the dispensary on December 17, 2009, for a dressing change, Nurse Price told the corrections officer accompanying him to remove him from dispensary and send him back to his tier. (Vol. 2 at 129:6). His records indicate that he was at Cermak on December 17, 2009. (Vol. 3 at 274: 13-17). Nurse Price did not treat Cooper, but he received a dressing change on December 17, 2009. (Vol. 2 at 166:19-167:13).

*December 23, 2009*

As of December 21, 2009, Cooper required colostomy care "as needed," and he did not need care every day. (Vol. 4 at 367:13-25). Cooper claims that he had an examination by Physician Assistant Manisha Patel and Nurse Price on December 23, 2009, and that Nurse Price would not change his dressings. (Vol. 2 at 135:7-11). His medical records indicate that this exam with P.A. Patel took place on December 22, 2009. (*Id.* at 57:17-58:18). There is no indication from the records that Nurse Price was present at the exam and P.A. Patel had no recollection of whether Nurse Price was present on the date. (*Id.* at 59:13-18). Cooper claims that he asked P.A. Patel to change his dressings, and that P.A. Patel instructed Nurse Price to do it, but she refused stating that she would find someone else to do it. (*Id.* at 134:15-19). Ten or fifteen minutes later another nurse changed Cooper's dressings. (*Id.* at 135:7-11).

*Other Relevant Testimony*

Cooper received dressing changes on December 17, 18, 19, 2009. (*Id.* at 165:11-167:13, 167:17-25, 168:18-169:3). Cooper did not see Nurse Price on December 16, 2009, and had no complaints about December 20, 21, 2009. (*Id.* at 164:22-165:2, 172:8-173:4). Nurse Hall recalled changing Cooper's dressings every couple of days, but over time it healed and he needed less

4

frequent changes, and he could do all the care on his own. (Vol. 4 at 366:16-367-2). There is no evidence in the record that Cooper was ever in distress or complained of having an emergency with his dressing. Nurse Hall also recalled that Cooper was very particular about how his dressings were done. (*Id.* at 365:1-24). P.A. Patel issued Cooper four biohazard bags per week and further testified that generally a patient is issued biohazard bags only if they are changing the dressings themselves. (Vol. 2 at 60:1-13, 64:2-11). Dr. Dennis, one of Cooper's treating surgeons, testified about the reversal of Cooper's colostomy, stating that there was no indication of any significant breakdown of the skin near the ostomy, otherwise he would not have performed the reversal surgery. (Vol. 3 at 258:17-21). Cooper began changing the dressings himself in his cell with the aid of his cellmate. Vol. 2 at 140:15-141:5).

**Discussion**

Cooper claims that Nurse Price failed to change the dressings around his fistula or delayed the changing of his dressings such that her conduct constitutes cruel and unusual punishment in violation of his constitutional rights. This Court finds that Cooper failed to carry his burden at trial.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that states provide their prisoners with proper medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). The constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment as opposed to an inmate's rights under the Eighth Amendment. *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). The Seventh Circuit Court of Appeals applies the same standard to claims arising under the Fourteenth Amendment for pretrial detainees as it does to claims brought by convicted prisoners under Eighth Amendment. *See Farnham*, 394 F.3d at 478 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a

5

pretrial detainee. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001). A mere failure to provide medical care, however, does not automatically violate the Eighth Amendment. In order to establish that Nurse Price violated his constitutional rights, Cooper must meet the two-part test set forth in *Farmer v. Brennan*: (1) the prisoner must show that his medical needs were "objectively, sufficiently serious," and (2) the prisoner must demonstrate that a prison official was deliberately indifferent to those needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).

A prisoner's medical need is objectively serious if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). The subjective element requires Cooper to show that Nurse Price "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to a prisoner's health or safety." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Cooper fails to meet either part of the test.

While, as this Court recognized in its Order denying summary judgment, a fistula with colostomy can constitute an objectively serious condition, the evidence presented at trial established that Cooper was able to care for his fistula and change his dressings on his own. The fact that he sought assistance from nurses at the dispensary does not mean that his medical need for a nurse to change the dressing was objectively serious. Indeed, the evidence established that Cooper did not need a nurse's assistance. He would not have been discharged from Stroger Hospital until he was able to care for the colostomy on his own; P.A. Patel testified that Cooper was able to change the dressings and colostomy bag himself; even Cooper testified to his own ability to change the dressing and bag himself. The fact that he preferred to have it done by a nurse in the dispensary cannot

6

establish deliberate indifference. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Evidence is similarly lacking on the second part of the test. Cooper's two instances of alleged delay do not support a conclusion that Nurse Price disregarded an excessive risk to Cooper's health and safety. The evidence establishes that on December 15, 2009, Division 10 did not have the appropriate colostomy bag to care for Cooper's wound and, recognizing this, Nurse Price delegated changing of his bag and dressing to Nurse Lozaro while she verified the supplies Cooper would need with their wound specialist and placed an order for the supplies. As charge nurse, Price was allowed to delegate duties to other nurses. Additionally, the record shows that Cooper saw Dr. Mansour and Nurse Price on that day and that his dressings were changed at least once by Nurse Hall that evening. Although Cooper testified that this delay caused him pain and discomfort, there is nothing in the record to indicate that Nurse Price was subjectively aware of Cooper's alleged pain. Moreover, there is no evidence in the record suggesting that his wounds did not heal effectively or that he suffered any lingering effects from the brief delay, if there was one.

Furthermore, the evidence established that Cooper received a dressing change on December 17, 2009, and did not even see Nurse Price that day. His only other complaint of delay by Nurse Price was during an examination with P.A. Patel on December 22 or 23, 2009. Neither his medical records, nor P.A. Patel, established that Nurse Price was even present at that examination. Yet, even Cooper's testimony on this issue shows that Nurse Price provided adequate care. He testified that P.A. Patel asked Nurse Price to change Cooper's dressing, Nurse Price said no, but found another nurse to do it. Cooper's own testimony indicated that his dressing was changed ten or fifteen minutes later.

Thus, the record establishes that Cooper arrived in Division 10 late in the evening on December 14, 2009, and received dressing changes December 15, 16, 17, 18, 19, and 22. He had no complaints at all about any care or treatment on December 20 or 21. "An act is reckless in the

7

pertinent sense when it reflects complete indifference to risk – when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death." *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (*en banc*). That is clearly not the case here. Whether or not Nurse Price was amenable to changing Cooper's colostomy bag or his dressings, the evidence shows that she was a charge nurse able to delegate tasks to other nurses, which she did. The evidence further established that the totality of Cooper's care, even if limited to December 2009, was certainly adequate and not indicative of deliberate indifference to his serious medical needs. *See Waler v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (isolated incidents of delay could not be construed as deliberate indifference given the totality of the prisoner's medical care).

Based on the foregoing findings of fact and conclusions of law, this Court finds in favor of defendants and against plaintiff.

IT IS SO ORDERED.

Date: March 26, 2015

Entered:_____
SHARON JOHNSON COLEMAN
United States District Judge